**THE TORO COMPANY, a Delaware Corporation, and Exmark Mfg. Co., a Nebraska Corporation, Plaintiffs,**

v.

**SCAG POWER EQUIPMENT, INC., a Wisconsin Corporation, and Metalcraft of Mayville, Inc., a Wisconsin Corporation, Defendants.**

No. 8:01CV279.

United States District Court, D. Nebraska.

Jan. 23, 2003.

Toni L. Bonney, David L. DeBruin, Michael E. Husmann, Jonathan H. Margolis,

Richard H. Marschall, Best & Friedrich Law Firm, Milwaukee, WI, Richard P. Jeffries, Kutak Rock, LLP, Omaha, NE, for Metalcraft of Mayville, Scag Power Equipment.

Jeffrey C. Brown, Alan W. Kowalchyk, Earl D. Reiland, Mark D. Schuman, Merchant, Gould Law Firm, Minneapolis, MN, Shane M. Niebergall, Thomte, Mazour Law Firm, Omaha, NE, Donald S. Trevarthen, Toro Co., Bloomington, MN, for Toro, Exmark Mfg. Co., Inc.

## MEMORANDUM AND ORDER

BATAILLON, District Judge.

### I. *Introduction*

Scag and Metalcraft ("the defendants") move for summary judgment of invalidity of U.S. Patent No. 5,822,961 (" '961"). Filing No. 100. Exmark and Toro ("the plaintiffs") oppose the motion. The parties have filed briefs and indexes of evidence.[1] Having carefully considered the parties' filings and the applicable law, I conclude that the defendants' motion must be denied.

### II. *Background*

Plaintiff Exmark is a wholly owned subsidiary of plaintiff Toro; it is located in Beatrice, Nebraska. Defendant Scag is a division of defendant Metalcraft of Mayville; together, they manufacture and sell hydro-drive, walk-behind mowers, Model SWZ/SWZU, which the plaintiffs alleged infringe Exmark's '961 patent. The Patent and Trademark Office ("PTO") granted the '961 patent to Exmark in October 1998 on its means for adjusting the output of hydraulic pumps that allow the mower to track in a straight line.

---

1. The parties have other pending summary judgment motions. These will be addressed in subsequent orders. This memorandum and order is limited to resolution of the motion for summary judgment of invalidity on the '961 patent.

### III. *Legal Standards*

*Summary Judgment.* Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The proponent of a motion for summary judgment bears the initial responsibility of showing the absence of a genuine issue of material fact which can be done by pointing to the lack of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the non-moving party must then set forth "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). When viewing the evidence, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

*Invalidity.* A patent is rebuttably presumed to be valid. 35 U.S.C. § 282. The party attacking the validity of a patent must prove the invalidity of each claim by clear and convincing evidence. *Jones v. Hardy,* 727 F.2d 1524, 1528 (Fed.Cir.1984). The defendants here contend that the '961 patent is invalid because its claims are both anticipated by prior art and obvious.

A patent is invalid if the prior art reveals that the invention was "known or used" in this country before its invention by the patent applicant or that the invention was patented more than a year before the date of the patent application. 35 U.S.C. § 102(a), (b). "An invention is not novel, and therefore not patentable, if a prior art reference discloses every element of the asserted invention." *In re '639 Patent Litigation,* 154 F.Supp.2d 157, 172 (D.Mass.2001) (citing *Lewmar Marine Inc. v. Barient Inc.,* 827 F.2d 744, 747 (Fed.Cir. 1987)). Whether prior art anticipates a claim is a factual question. *Atlas Powder Co. v. Ireco, Inc.,* 190 F.3d 1342, 1346 (Fed.Cir.1999). "To anticipate a claim, a prior art reference must disclose every limitation of the claimed invention, either explicitly or inherently." *In re Schreiber,* 128 F.3d 1473, 1477 (Fed.Cir.1997).

A patent is also invalid if the differences between the invention and the prior art are such that the invention "as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a). The test under section 103 is "whether the claimed invention, considered as a whole, would have been obvious or nonobvious." *Jones v. Hardy,* 727 F.2d at 1529.

Whether an invention is invalid because obvious is a legal determination that depends on four factual findings: 1) the scope and content of the prior art; 2) differences between the claimed invention and the prior art; 3) the level of ordinary skill in the art; and 4) secondary considerations of nonobviousness, such as commercial success, long-felt but unresolved need, failure of others, and so on. *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). According to the Federal Circuit, a district court is expected to make these *Graham* factual findings before invalidating a patent for obviousness, particularly "where the invention

is less technologically complex, as is the case here."[2] *Ruiz v. A.B. Chance Co.,* 234 F.3d 654, 663, 664 (Fed.Cir.2000). Hence, a motion for summary judgment of invalidity based on obviousness is appropriate "when the factual inquiries into obviousness present no genuine issue of material facts." *Ryko Mfg. Co. v. Nu–Star, Inc.,* 950 F.2d 714, 718 (Fed.Cir.1991).

### IV. *Discussion*

This motion visits yet again the defendants' attack on the adjustment means found in the hydraulic mower covered by the '961 patent. The defendants contend that claims 5, 6, and 7 of the patent are so broadly written that they encompass the adjustment means of plaintiff Exmark's own prior art mowers. The defendants also argue that even if Exmark's prior art mower did not anticipate claims 5, 6 and 7 of the '961 patent, the claims were still invalid because, based on prior art, they were obvious. The defendants undergird both arguments with the assertion that the plaintiffs failed to disclose material prior art to the PTO, an assertion already examined in my prior order denying the defendants' motion for summary judgment for inequitable conduct. *See* Filing No. 185.

■ *Anticipation.* The defendants contend that the plaintiffs' own prior art discloses all the elements of claims 5, 6, and 7 of the '961 patent and therefore anticipates those claims. Specifically, the defendants argue that under the means-plus-function analysis of 35 U.S.C. § 112, ¶ 6, the scope of the adjustment means limitation in each claim includes both the prior art adjustment means from plaintiff Exmark's own mowers as well as the allegedly new adjustment means with a spring and knob

"because both configurations perform the claimed adjustment function." Defendants' Brief at 12. Further, the defendants argue that because the plaintiffs' own prior art adjustment means was also "infinitely" adjustable without bringing the mower to a halt, the prior art adjustment means performed all functions claimed by the '961 patent adjustment means. The defendants insist that the '961 mower differs from prior art Exmark mowers only in the compression spring and knob substituted on one side of the structure for two jam nuts. *Id.* at 13.

The plaintiffs respond that the PTO examiner correctly concluded that no prior art contained all of the elements in claims 5, 6, and 7 of the '961 patent. First, the plaintiffs maintain, no structure in a prior art mower performs the claimed adjustment means function described in the patent specification. The '961 mower associates the prior art jam nut mechanism with the hydraulic pump on one side, but the new adjustment means structure is associated with the hydraulic pump on the other side, thereby allowing the '961 mower to be adjusted "on the fly." *See* '961 Patent, col. 1, lines 41–51. Second, the plaintiffs maintain that no prior art mower contains each and every element of claims 5, 6, and 7 because none can be adjusted on the fly, none has the structure of the adjustment means of claims 5, 6, and 7 (*i.e.,* a threaded hand-operated device, such as a knob, mounted above a swivel, on a threaded rod, and including a compression spring and jam nut), and none can be adjusted without tools.

As even this brief recitation of the parties' positions indicates, the parties are at loggerheads over the significance of the

---

**2.** The court observed that easily understood inventions "may prompt one 'to fall victim to the insidious effect of a hindsight syndrome wherein that which only the inventor taught is used against its teacher.'" *Ruiz v. A.B. Chance Co.,* 234 F.3d 654, 664 (Fed.Cir.2000) (quoting *In re Dembiczak,* 175 F.3d 994, 999 (Fed.Cir.1999)).

prior art mowers and the function of all the mowers' adjustment means. Under such circumstances, granting the defendants' motion for summary judgment of invalidity based on anticipation would be improper. Since material factual questions remain about whether Exmark's own prior art mowers anticipated the claims of the '961 patent, the defendants' motion for summary judgment is denied.

■ *Obviousness.* The defendants argue that claims 5, 6, and 7 were obvious to those of ordinary skill in the art at the time of the alleged invention since all of the limitations in these claims are present in prior art.

The defendants say that like the claimed adjustment means, an adjustment means used by Ferris Industries since 1992 contains a compression spring to bias a nut that is used to adjust tracking on the mower, thereby allowing the mower to be adjusted by hand without stopping. The defendants contend the only difference between two adjustment means is that the Ferris adjustment means uses a smaller nut rather than the knob of the '961 patent. That it was long known in the art that a knob could be interchanged with a smaller nut, the defendants say, is shown in the evolution of defendant Scag's own mowers from use of a nut to use of a hand-operated nut/knob. Defendants' Brief at 18. According to the defendants, one of ordinary skill would have known and been motivated to combine the Ferris adjustment means with the Scag nut/knob to make the adjustment means hand-operated, since enlarging a nut to the size of a knob to make it hand-operable was not a novel engineering concept. The result allegedly would have been the adjustment means of the '961 patent.

The plaintiffs respond that even if elements of an invention existed separately in prior art, the invention will not be rendered invalid because obvious. The plaintiffs say that the defendants have failed to provide evidence that the prior art taught, suggested, or motivated the combination of prior art to produce the claimed invention. The plaintiffs dispute the defendants' position that one skilled in the art would automatically think to replace a nut with a knob, especially since knob on the '961 mower is the means to accomplish the tracking adjustment, whereas the nut on the prior art mowers was only used to lock the adjustment mechanism into a fixed position—a wholly separate function. Nor does any prior art teach or suggest combining a knob with a compression spring so that the tracking of the mower can be manually adjusted without tools and without stopping. The invention simply did not exist until the inventor invented it.

I generally concur with the plaintiffs' evaluation of the defendants' arguments, but given the testimony of Mr. Wenzel from Ferris Industries about the existence and operation of the adjustment means on the prior art Ferris mower, I cannot outright reject the defendants' obviousness arguments.[3] I am unable to see in the defendants' evidence, however, a clear and convincing showing that the prior art Exmark, Ferris, and Scag mowers taught, suggested, or motivated the precise combination of a knob or other equivalent device with a compression spring to accomplish the tracking adjustment without tools and without halting the mower. Individual ele-

---

**3.** As the plaintiffs point out, however, Wenzel is hardly a disinterested witness in this case. His company not only competes with the plaintiffs for mower sales, but his company is also a client of the law firm representing the defendants in this case. Wenzel in fact testified at his deposition that he believed himself represented by that firm during the deposition.

ments of the claimed invention certainly appear in the prior art, but it is the combination of those elements—the invention as a whole—that the defendants must show to have been obvious to one with ordinary skill in the art.

Nor have the defendants succeeded in showing the so-called "secondary considerations of nonobviousness," such as "commercial success, long-felt but unresolved need, failure of others, copying, and unexpected results." *Ruiz v. A.B. Chance*, 234 F.3d at 662–63. For example, the defendants contend that the plaintiffs cannot prove that sales of their hydraulic mowers improved because of claimed adjustment means with its exterior, hand-adjustable knob. But on the other hand, the need for the invention was reflected in the deposition testimony of Scag's own vice-president of product development. He testified that by 1999,[4] Scag had incorporated a manually operated knob tracking adjustment mechanism on its mowers in response to requests from customers, dealers, and sales managers.

The evidence produced for this motion certainly raises factual questions about the obviousness of the plaintiffs' invention. That evidence, however, does not yet reach the clear and convincing level required to invalidate the patent. I conclude that genuine issues of material fact remain on each of the *Graham* factors, issues better resolved by a jury. Accordingly,

IT IS ORDERED that the defendants' motion for summary judgment of invalidity of U.S. Patent No. 5,822,961, Filing No. 100, is denied.

---

4. The Exmark mower with the claimed invention first sold in 1997. The plaintiffs filed the patent application in March 1997. The PTO granted the patent in October 1998.