**LINK TREASURE LIMITED, company organized and existing under the laws of the British Virgin Islands, Plaintiff,**

v.

**BABY TREND, INC., a corporation organized and existing under the laws of the state of California, Defendants.**

**Case No. EDCV 07–828–VAP (OPx).**

United States District Court,
C.D. California.

Aug. 15, 2011.

---

Bryan G. Harrison, Heather Champion Brady, John P. Fry, Tingkang Xia, Morris Manning & Martin LLP, Atlanta, GA, Harold J. Fassnacht, Miller Matthias and Hull LLP, Chicago, IL, Ian R. Feldman, Keith E. Butler, Clausen Miller P.C., Irvine, CA, for Plaintiff.

H.G. Robert Fong, Ku & Fong, Los Angeles, CA, Keith E. Butler, Clausen Miller, Irvine, CA, Michael B. Reynolds, Snell & Wilmer LLP, Costa Mesa, CA, for Defendants.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**[Motion filed on April 25, 2011]**

VIRGINIA A. PHILLIPS, District Judge.

Plaintiff Link Treasure Limited ("Plaintiff") filed this action for patent infringement, alleging that Defendant Baby Trend, Inc. ("Defendant") infringed two patents owned by Plaintiff relating to folding baby strollers. Defendant brought a counterclaim against Plaintiff for a declaratory judgment of non-infringement, invalidity, and unenforceability of the asserted patents. Before the Court is Defendant's motion for summary judgment or partial summary judgment on Plaintiff's claims and Defendant's counterclaim and affirmative defenses ("Motion"). The parties came before the Court for a hearing on July 18,

2011. After considering the arguments in support of and in opposition to the Motion, the Court GRANTS the Motion.

## I.  BACKGROUND

### A.  Procedural History

On August 18, 2006, Plaintiff and former co-plaintiff Discovery International Co., Ltd. ("Discovery") filed a complaint against Defendant in the Northern District of Georgia. (*Link Treasure Ltd. v. Baby Trend, Inc.*, No. 06–1930 (N.D.Ga. filed Aug. 18, 2006), Doc. No. 1 (Compl.).[1]) In the Complaint, Plaintiff accused Defendant of infringing two patents it owns by assignment: (1) U.S. Patent No. 5,876,057, issued on March 2, 1999, a utility patent entitled "Folding Device for a Stroller" (the "'057 patent"); and (2) U.S. Patent No. D430,826, issued on September 12, 2000, a design patent entitled "Frame of Three–Wheeled Stroller" (the "'826 patent"). (Compl. ¶¶ 1, 8–25.) On December 15, 2006, Plaintiff filed a First Amended Complaint ("FAC") against Defendant, asserting the same claims but removing Discovery as a party. (Doc. No. 27.)

On October 11, 2006, Defendant filed its answer and a counterclaim against Plaintiff seeking a declaratory judgment of noninfringement, invalidity, and unenforceability of the '057 patent and the '826 patent. (Doc. No. 6.) On June 18, 2007, the District Court in Georgia granted Defendant's Mo-

tion to Transfer Venue, transferring the case to this Court. (Doc. No. 57.)

On October 23, 2008, the Court held a *Markman* hearing regarding claim construction for certain terms in the '057 patent, and on November 13, 2008, 2008 WL 4926960, the Court issued a Claim Construction Order. (Doc. No. 85 (Claim Constr. Order).) On October 22, 2009, Defendant filed a Notice of Stay and Filing of Bankruptcy Petition. (Doc. No. 104.) On January 27, 2010, the Court stayed the action pending resolution of Defendant's bankruptcy petition. (Doc. No. 105.) On February 8, 2011, the Court withdrew the reference to the Bankruptcy Court in part. (Doc. No. 106.)

On April 25, 2011, Defendant filed the Motion (Doc. No. 112), along with: (1) a statement of uncontroverted facts and conclusions of law ("SUF") (Doc. No. 112–1); (2) a declaration of Danny Tsai ("Tsai Declaration"), attaching exhibits A through M, X, and Z (Doc. No. 112–2); (3) a declaration of Edward Lin ("Lin Declaration"), attaching exhibits N through W (Doc. No. 112–3); (4) a declaration of Deborah S. Mallgrave ("Mallgrave Declaration"), attaching exhibit Y (Doc. No. 112–4); and (5) a request for judicial notice ("RJN")[2] (Doc. No. 113).

On May 23, 2011, Plaintiff filed its opposition to the Motion ("Opposition") (Doc. No. 114), along with: (1) a statement of

---

1. The action was transferred to this Court on June 18, 2007, at which time the action received a new case number. *Link Treasure Ltd. v. Baby Trend, Inc.*, No. 07–828 (C.D. Cal. transferred Jun. 18, 2007). Although all documents filed after July 16, 2007, were filed on the Central District of California docket, each document in this action was numbered continuously and thus each document has a unique electronic document number ("Doc. No."). Accordingly, the Court cites the document number for the relevant documents without distinguishing between the Georgia and the California dockets.

2. Defendant requests the Court take judicial notice of documents the parties filed in the District Court for the Northern District of Georgia and in the Bankruptcy Court for the Central District of California while the action was before these courts. (*See* RJN at 2–3.) The Court finds these documents appropriate for judicial notice, *see* Fed.R.Evid. 201, and Plaintiff does not challenge their authenticity. Accordingly, the Court takes judicial notice of the requested documents.

genuine issues ("SGI") and statement of uncontroverted material facts ("UMF") (Doc. No. 114–1); (2) a declaration of Harold J. Fassnacht ("Fassnacht Declaration"), attaching exhibits A through E (Doc. No. 114–2); and (3) a declaration from Ruby Wu ("Wu Declaration"), attaching Exhibit A (Doc. No. 114–3).

On May 27, 2011, Defendant filed its reply in support of the Motion ("Reply") (Doc. No. 115), along with evidentiary objections to the Fassnacht and Wu Declarations ("Defendant's Evidentiary Objections") (Doc. No. 116).

## B. Evidentiary Objections

First, Defendant objects to both the Fassnacht and Wu Declarations because they do not satisfy the statutory requirement of 28 U.S.C. § 1746 that the statements within be sworn under penalty of perjury. (Def.'s Evidentiary Objections at 2.) Defendant also objects to the statements in the Wu Declaration as lacking foundation as to personal knowledge, and containing only conclusory statements, speculation, and hearsay. (*Id.* at 2–9.)

■ The Court sustains Defendant's objections to the Fassnacht and Wu Declarations on both grounds. First, compliance with the requirement of 28 U.S.C. § 1746 is mandatory, and neither Fassnacht nor Wu comply with its requirements by stating that their declarations are made under penalty of perjury. *See, e.g., Schroeder v. McDonald,* 55 F.3d 454, 460 n. 10 (9th Cir.1995) (accepting as valid a declaration that did not follow § 1746 with precision, but asserted that statement was made under penalty of perjury that the contents were true and correct). Defendant filed its objections on May 27, 2011, and therefore Plaintiff had ample notice of this defi-

ciency, and could have remedied it by submitting sworn declarations. Plaintiff failed to do so.

■ Additionally, Defendant's objections to the Wu Declaration are well-taken. In her declaration, Wu does not state her job title, her job responsibilities, or why or how she has knowledge of the facts she asserts. Accordingly, the Wu Declaration is inadmissible under Federal Rule of Civil Procedure 56(c)(4) as lacking an adequate foundation. Accordingly, the Court does not rely upon the statements in either the Fassnacht or Wu Declarations to resolve the Motion.

## C. Uncontroverted Facts

The Court finds the following material facts are supported adequately by admissible evidence and are uncontroverted. They are "admitted to exist without controversy" for the purposes of these Motions. L.R. 56–3; *see generally* Fed. R.Civ.P. 56.

### 1. The '826 Patent

The '826 patent was filed on December 27, 1999, and assigned to Plaintiff. (SUF ¶ 1; UMF ¶ 1.) The "critical date," or "bar date," for purposes of an on-sale bar is thus December 27, 1998. (SUF ¶ 2; UMF ¶ 2.)

Lerado Group, Ltd. ("Lerado") is Plaintiff's parent company, and is responsible for manufacturing strollers for Plaintiff.[3] (SUF ¶ 3; UMF ¶ 3.) Defendant is a California company, located in Ontario, California. (SUF ¶ 4; UMF ¶ 4.) Before the critical date of December 27, 1998, Defendant and Lerado were negotiating the sale of Lerado Model T–415 strollers ("T–415 Strollers") to Defendant.[4] (SUF ¶ 5;

---

**3.** The parties disagree whether Lerado is itself a stroller manufacturer (SUF ¶ 3), or whether it is the parent company of a stroller manufacturer (UMF ¶ 3). The Court finds this dispute is immaterial, as both sides agree on Lerado's role in this action.

**4.** The T–415 Strollers are the same as Defendant's model number 9210TW strollers and

UMF ¶ 5.) These negotiations took place in person and through correspondence. (SUF ¶ 6; UMF ¶ 6.)

In mid–1998, Defendant's director Denny Tsai ("Tsai") visited the Lerado factory in China. (SUF ¶ 7; Tsai Decl. ¶ 3; UMF ¶ 7.) During that visit, Tsai was shown a sample of what he believes was the T–415 Stroller. (SUF ¶ 7; Tsai Decl. ¶ 3.) During the fall of 1998, employees at Lerado sent Tsai photographs and a sample of a T–415 Stroller, and he negotiated with managers at Lerado over the price of the strollers. (SUF ¶¶ 8, 10; Tsai Decl. ¶¶ 4–6; *id.*, Ex. A, B, X; UMF ¶¶ 8, 10.)

In October and November 1998, Defendant and Lerado exchanged purchase order documents regarding Defendant's order of T–415 Strollers from Lerado ("Purchase Order Documents").[5] (SUF ¶ 9; Tsai Decl. ¶¶ 7–9.) On December 11, 1998, Defendant issued a letter of credit (the "Letter of Credit") in favor of Plaintiff for the purchase of T–415 Strollers. (SUF ¶ 11; UMF ¶ 11.)

On December 28, 1998, an independent safety testing company issued a "Certificate of Compliance" for the T–415 Stroller (identified in the Certificate as Defendant's 9210 Stroller). (SUF ¶ 12; UMF ¶ 12.[6]) On January 25, 1999, Lerado issued a commercial invoice to Defendant (the "January 25, 1999, Invoice") stating a shipping vessel containing 4,500 T–415 Strollers would be sailing to Los Angeles on or about January 27, 1999. (Tsai Decl., Ex. I.)

## II. LEGAL STANDARD

A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Hodosh v. Block Drug Co., Inc.,* 786 F.2d 1136, 1141 (Fed.Cir.1986) (holding summary judgment to be appropriate "in patent as in other cases"). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505.

The initial burden is on the moving party to demonstrate that it is entitled to summary judgment. *Margolis v. Ryan,* 140 F.3d 850, 852 (9th Cir.1998); *In re Oracle Corp. Sec. Litig.,* 627 F.3d 376, 387 (9th Cir.2010). The moving party bears the burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-

---

are the subject of the '826 patent. (SUF ¶ 5; UMF ¶ 5.) Accordingly, many of the documents refer to the T–415 Strollers as model number 9210TW strollers; for ease of reference, however, the Court uses only the term "T–415 Strollers" to refer to the strollers that are the subject of the '826 patent.

**5.** Plaintiff disputes the submitted documents are purchase orders, but neither challenges the Tsai Declaration submitting the documents, nor suggests an alternative description for the documents, which list item numbers, quantities, order dates, and shipping dates of goods with item numbers matching the strollers mentioned above. (UMF ¶ 9.) The Court thus overrules Plaintiff's challenges to these documents, based in part upon its previous ruling against the Wu Declaration.

**6.** The parties do not dispute this fact, although the Court notes that the quality of the submitted Certificate of Compliance is so poor as to render it almost unreadable. (*See,* RJN, Ex. 6 (Pl.'s Opp'n to Def.'s Mot. for Order Disallowing Claim); *id.,* Ex. B.)

moving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the nonmoving party's case. *Id.; In re Oracle,* 627 F.3d at 387.

The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *see also* Fed.R.Civ.P. 56(c); *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,* 731 F.2d 831, 836 (Fed.Cir.1984) ("The party opposing the motion must point to an evidentiary conflict created on the record at least by a counter statement of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant. Mere denials or conclusory statements are insufficient.").

A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. In ruling on a motion for summary judgment, a court construes the evidence in the light most favorable to the non-moving party. *Barlow v. Ground,* 943 F.2d 1132, 1135 (9th Cir.1991); *In re Oracle,* 627 F.3d at 387; *Barmag Barmer,* 731 F.2d at 836.

### III. DISCUSSION

Plaintiff claims Defendant "has manufactured, used, sold or offered for sale at least one design of a baby stroller that infringes the '826 [p]atent" and "at least one design of a baby stroller that infringes the '057 [p]atent." (FAC ¶¶ 8–9.) Specifically, Plaintiff alleges Defendant's model number 9114 "Expedition Jogging Stroller," which Defendant sold in 2006, infringes both patents, and several other strollers Defendant created and sold might also infringe the two patents. (Opp'n at 6.)

Defendant argues it is entitled to summary judgment, or partial summary judgment, on multiple grounds. Regarding the '826 patent, Defendant first argues the patent is invalid based upon the "on-sale bar" codified in 35 U.S.C. § 102(b). (Mot. at 11–16.) Defendant next argues that even if the '826 patent is not invalid, its strollers do not infringe the '826 patent. (*Id.* at 16–21.) Regarding the '057 patent, Defendant first argues the patent is invalid as obvious under 35 U.S.C. § 103. (*Id.* at 21–34.) Defendant next argues that even if the '057 patent is not invalid, its strollers do not infringe the patent. (*Id.* at 34–43.) Plaintiff disputes Defendant's arguments.

### A. The '826 Patent: The On–Sale Bar

Defendant first argues the '826 patent is invalid based upon the on-sale bar because Plaintiff offered the product claimed in the '826 patent (*i.e.,* the T–415 Stroller) for sale and the T–415 Stroller was ready for patenting before the critical date of December 27, 1998, one year before Plaintiff filed the '826 patent application. (Mot. at 11.) Plaintiff argues the on-sale bar does not apply because Plaintiff did not make an offer to sell the T–415 Strollers before the critical date, and even if it did make such an offer, those actions did not take place "in this country" as § 102(b) requires. (Opp'n at 12.)

### 1. The On–Sale Bar

■ A patent is presumed valid. *See* 35 U.S.C. § 282. Under the on-sale bar, however, an inventor may not patent an invention that has been "on sale" more than one year before the patent application is filed. 35 U.S.C. § 102(b); *see also Pfaff v. Wells Elecs., Inc.,* 525 U.S. 55, 57, 119 S.Ct. 304, 142 L.Ed.2d 261 (1998). "An invention is

so barred when it was both the subject of a commercial offer for sale before the critical date and ready for patenting at the time of the offer." *Atlanta Attachment Co. v. Leggett & Platt, Inc.*, 516 F.3d 1361, 1365 (Fed.Cir.2008) (citing *Pfaff*, 525 U.S. at 67, 119 S.Ct. 304).

A party challenging the validity of a patent on the basis of the on-sale bar "must demonstrate by clear and convincing evidence that there was a definite sale or offer to sell" before the critical date. *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1045–46 (Fed.Cir.2001); *see also Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. ——, 131 S.Ct. 2238, 2252–53, 180 L.Ed.2d 131 (2011) (affirming "clear and convincing evidence" as the standard of proof by which the party with the burden of persuasion must convince the factfinder of patent invalidity). Whether an invention was "on sale" within the meaning of § 102 is a question of law based upon underlying factual determinations. *Key-Stone Retaining Wall Systems, Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1451 (Fed. Cir.1993) (internal citations omitted); *Microsoft Corp.*, 131 S.Ct. at 2242–43 (citing *Pfaff*, 525 U.S. at 67–69, 119 S.Ct. 304).

The purpose of the on-sale bar is to balance the benefit of "prompt and widespread disclosure of inventions to the public" with the need to give the inventor a reasonable amount of time to determine whether a patent is worth developing further, while also "precluding attempts by the inventor or his assignee from commercially exploiting the invention more than a year before the application for patent is filed." *W. Marine Elecs., Inc. v. Furuno Electric Co., Ltd.*, 764 F.2d 840, 845 (Fed. Cir.1985).

### 2. Whether the T–415 Strollers Were Offered For Sale

Defendant argues it purchased the T–415 Strollers [7] when Tsai negotiated with Lerado and eventually accepted Lerado's offer to sell T–415 Strollers to Defendant. (Mot. at 11–13.) Plaintiff concedes Defendant and Lerado were negotiating over the T–415 Strollers, but argues that Lerado did not make a final offer of sale to Defendant, and thus Defendant could not have accepted it. (Opp'n at 16.) Plaintiff's assertions are belied by the evidence before the Court.

For an offer to satisfy the on-sale bar, the patent owner must make "an offer for sale in the contract sense" as "analyzed under the law of contracts as generally understood." *Group One*, 254 F.3d at 1046–47. "Only an offer which rises to the level of a commercial offer for sale, one which the other party could make into a binding contract by simple acceptance (assuming consideration), constitutes an offer for sale under § 102(b)." *Id.* at 1048. Here, there is no direct evidence of an offer of sale made by Lerado to Defendant to purchase the T–415 Strollers. There is, however, substantial circumstantial evidence in the form of purchase order documents, financial documents, and shipping documents, demonstrating that Lerado did make such an offer of sale to Defendant, which Defendant accepted.

Plaintiff disputes the validity of the Purchase Order Documents, but as noted previously, did not submit any admissible evidence controverting them. The three Purchase Order Documents show a series of orders from Defendant to Lerado for the T–415 Strollers.[8] Each separate order

---

**7.** The parties do not dispute, and the Court finds, that the T–415 Strollers embody the claimed invention of the '826 patent.

**8.** As stated above, Defendant used the model number 9210TW to identify the T–415 Strollers, so most of the documents identify the strollers as 9210TW.

for the T–415 Strollers, and for other stroller models, is identified by a "P.O. # " (*i.e.,* purchase order number). (*See* Tsai Decl., Exs. C–E.) The Purchase Order Documents list the items being ordered, the quantities, and the dates of the order and the requested and scheduled ship dates. (*Id.*) The Purchase Order Documents thus show communication between Lerado and Defendant regarding Defendant's purchase of T–415 Strollers.

The legitimacy of the Purchase Order Documents is further supported by the Letter of Credit issued on December 11, 1998, which lists Defendant as the applicant and Lerado as the beneficiary. (Tsai Decl., Ex. G.) The Letter of Credit, which is for a total of $470,185.20, includes two orders for 4,500 T–415 Strollers. (*Id.*) Two of the purchase order numbers on the Letter of Credit—LD–306 and LD–307— match the purchase order numbers from the Purchase Order Documents. Finally, the January 25, 1999, Invoice confirms "P.O. No. LD–307" as an order for 4,500 T–415 Strollers to be shipped on January 27, 1999.[9]

The Federal Circuit has held a purchase order to be evidence of an offer for sale where there was no genuine issue of material fact that the purchase order "memorialized" the defendant's proposal to sell a working prototype of the patented invention to the plaintiff for a set price. *See Netscape Commc'ns Corp. v. Konrad,* 295 F.3d 1315, 1324–25 (Fed.Cir.2002). The Federal Circuit, finding the invention was ready for patenting at the time of the offer for sale, found the patented claims invalid under the on-sale bar. *Id.* Here, as in *Netscape,* Defendant introduced Purchase Order Documents setting forth the item number, quantity, sale price, and shipping

date of the patented invention. These Purchase Order Documents, along with the Letter of Credit and the January 25, 1999, Invoice, memorialize a sale agreement between Defendant and Lerado for sale of the T–415 Strollers.

Plaintiff also argues the evidence does not support Defendant's claims that Lerado made an offer of sale to Defendant. (Opp'n at 13–15.) Plaintiff asserts, for example, that Tsai's visit to the Lerado factory and the photographs and Purchase Order Documents exchanged by the companies are evidence only that "Lerado and [Defendant] were involved in negotiations for the development and eventual sale of baby strollers." (Opp'n at 15.) Plaintiff also argues the T–415 Strollers were not offered for sale before the critical date because the strollers had not yet passed safety testing requested by Defendant's retail distributor. (*Id.* at 17.)

As explained above, the evidence demonstrates Lerado and Defendant had moved beyond negotiations and into a final sale contract. Additionally, while the evidence is uncontroverted that a safety testing company issued a certificate of compliance for the T–415 Strollers on December 28, 1998, Plaintiff does not provide any basis for its argument that the strollers could not be sold before they received safety compliance certification, nor that the sales transaction between Lerado and Defendant was contingent upon issuance of a safety compliance certification.

Viewing the record as a whole, the Court finds Defendant has introduced clear and convincing evidence to support its contention that Plaintiff, through its parent company Lerado, made an offer to sell the T–415 Strollers to Defendant be-

---

**9.** It is well-established that "[t]he fact that delivery was set for dates after the critical date is irrelevant to the finding of a commercial offer to sell [under the on-sale bar]."

*STX, LLC v. Brine, Inc.,* 211 F.3d 588, 590 (Fed.Cir.2000) (citing *Pfaff,* 525 U.S. at 67, 119 S.Ct. 304).

fore the critical date of December 27, 1998. While Lerado and Defendant may have been negotiating up until early December, the Court finds the Letter of Credit issued on December 11, 1998, is evidence the companies had reached a final agreement for sale of the strollers. The evidence further shows Defendant accepted Lerado's offer of sale, and Lerado then shipped 4,500 T–415 Strollers to Defendant in January 1999.

Plaintiff argues that, at the least, there are "different possible interpretations of what these transactions meant" and thus there is a genuine issue of material fact over whether Lerado offered the T–415 Stroller for sale before December 27, 1998. (Opp'n at 16.) At the hearing, Plaintiff also argued that the Court should not grant the Motion because all of the relevant documentation was provided by Defendant.

Plaintiff has not, however, offered any evidence supporting its contention that the T–415 Stroller were not "on-sale" before the critical date, nor does it offer any interpretations of the documents supporting its theory. Where the moving party has met its burden on a motion for summary judgment, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

The Court finds Defendant has provided clear and convincing evidence that Lerado made an offer to sell the T–415 Strollers to Defendant before the bar date of December 27, 1998, and that Defendant accepted that offer.

### 3. Whether The Sale Was In This Country

■ Plaintiff argues that, even if Lerado made an offer to sell the T–415 Strollers to Defendant before the critical date, the exchange does not satisfy § 102(b) because the offer was not made "in this country" and instead was made abroad. (Opp'n at 17–18.) Defendant argues Lerado's offer to sell the T–415 Strollers to Defendant was made in this country because the two companies negotiated by correspondence, and offers originating abroad but directed to companies in the United States satisfy the on-sale bar. (Mot. at 13–14.)

Defendant contends that because it is a California-based company, Lerado's negotiations and eventual sale offer were directed to the United States. Defendant supports its argument by referring to the Federal Circuit's holding that an offer made by a company in England which was "directed to" an American company's place of business in the United States fell under the on-sale bar. *In re Caveney,* 761 F.2d 671, 676–77 (Fed.Cir.1985).

In *Caveney,* the court upheld the Patent and Trademark Office's rejection of a patent application on the basis of the on-sale bar because the patented product was sold by its English manufacturing company more than a year before the bar date. *Id.* at 673–74. The Circuit rejected the patent applicant's argument that the offer to sell was outside the scope of the on-sale bar because, although the manufacturer "presumably made its offer from England, that offer was directed to [the buyer] at its place of business in the United States." *Id.* at 677. The facts of *Caveney* are similar to the facts here; both cases involve the sale of a claimed invention by a foreign manufacturer to an American company's place of business in the United States, and thus the on-sale bar likewise applies to

Lerado's sale of the T–415 Strollers to Defendant.

By contrast, the cases Plaintiff cites in support of its argument are easily distinguishable from the facts of this action. In *In re Elsner*, 381 F.3d 1125 (Fed.Cir.2004), the Federal Circuit, while examining the issue of prior publication under § 102(b), noted that "foreign sales themselves do not constitute an on-sale bar." *Id.* at 1128. In *Elsner*, however, the referenced foreign sales took place entirely abroad—specifically in Germany, South Africa, and Zambia—with no connection to the United States or any of its residents. *Id.* at 1127. Thus the sales at issue in *Elsner* are distinguishable from the facts here, where the goods were sold to Defendant, an American company based in Ontario, California.

Plaintiff's reliance on *Robbins Co. v. Lawrence Manufacturing Co.*, 482 F.2d 426 (9th Cir.1973), is similarly misplaced. In *Robbins*, the Ninth Circuit determined that an offer of sale consummated in and directed toward Australia still fell within the on-sale bar because "sufficient activity prefatory" to the sale occurred in the United States, including the making of the offer, some contract negotiations, and the testing, disassembly, and packing of the machine. *Id.* at 434–35. In *Robbins*, the patented invention was a tunnel boring machine sold to an Australian commission for use in Australia. *Id.* at 428–29. The Ninth Circuit focused on the activity that occurred in the United States to apply the on-sale bar, despite the fact that the claimed invention was paid for and used abroad. *Id.* at 434–35; *see also Aguayo v. Universal Instruments Corp.*, 356 F.Supp.2d 699, 741–43 (S.D.Tex.2005) (holding the on-sale bar was triggered where actual offer of sale occurred in the United States, although claimed invention was both manufactured and used abroad). Thus, in cases involving an offer of sale between a foreign party and a domestic party, courts have found the on-sale bar applicable in circumstances where the connection to the United States is far more tenuous than it is here.

"The overriding concern of the on-sale bar is an inventor's attempt to commercialize his invention beyond the statutory term." *Netscape*, 295 F.3d at 1323 (citing *STX*, 211 F.3d at 590); *see also Atlanta Attachment*, 516 F.3d at 1365 ("Our patent laws deny a patent to an inventor who applies for a patent more than one year after making an attempt to profit from his invention by putting it on sale."). The language of the statute focuses on commercialization which occurs "in this country" more than a year before the patent application date. 35 U.S.C. § 102(b).

During their negotiations over the sale of the T–415 Strollers, Defendant and Lerado were aware that a successful transaction would lead to the eventual sale of the strollers in the United States. It would be contrary to the intent of the statute to find that where a foreign company manufactures goods for sale in the United States, and makes an offer of sale of these goods to a United States company, the sale is exempt from the on-sale bar. Accordingly, the Court finds that Lerado's offer of sale to Defendant of the T–415 Strollers occurred "in this country" for purposes of the on-sale bar. *See Caveney*, 761 F.2d at 676–77.

### 4. The '826 Patent Was Ready For Patenting

Plaintiff does not dispute that the design in the '826 patent was "ready for patenting" prior to the bar date. (Opp'n at 18.) The photographs sent by Lerado's managers to Tsai support this fact, as they demonstrate that the '826 patent design had been "reduc[ed] to practice" before the bar date. *See Pfaff*, 525 U.S. at 67, 119 S.Ct. 304 (stating that one way to prove an

invention is ready for patenting is to provide proof of its "reduction to practice before the critical date"). Thus, the Court finds the design claimed in the '826 patent was ready for patenting at the time Lerado and Defendant negotiated for sale of the T–415 Strollers.

The invention disclosed in the '826 patent is thus invalid under the on-sale bar because it "was both the subject of a commercial offer for sale before the critical date and ready for patenting at the time of the offer." *Atlanta Attachment*, 516 F.3d at 1365. The evidence shows that Plaintiff's parent company, Lerado, offered the T–415 Strollers to Defendant for sale in late November or early December of 1998, and Defendant accepted that offer. The offer satisfies the requirement of occurring "in this country" because the offer was directed toward an American company, and the goods were to be sold in the United States. At that time, the design claimed in the '826 patent was ready for patenting. Accordingly, the Court finds the '826 patent is invalid under the on-sale bar. *See* 35 U.S.C. § 102(b).

As the Court finds the '826 patent is invalid, it need not address Defendant's secondary argument that its strollers do not infringe the '826 patent.

## B. The '057 Patent: Obviousness Based Upon Prior Art

Defendant argues it did not infringe the '057 patent, because the invention claimed in the '057 patent is one that would have been obvious to one of ordinary skill in the art of folding strollers. (Mot. at 21–22.) Defendant thus asserts that, based upon devices and features disclosed in prior art, the alleged invention of the '057 patent is invalid for obviousness. (*Id.* at 22–34.)

Plaintiff contends Defendant's obviousness defense fails because the prior art does not disclose the key element of the '057 patent, *i.e.,* the sliding plate. (Opp'n at 27.) Plaintiff also argues that even if the prior art disclosed a sliding plate, incorporating that sliding plate into the folding mechanism of the '057 patent "would have been beyond the level of skill in the art" at the time of Plaintiff's invention. (*Id.*)

### 1. Obviousness

A patent is presumed valid. *See* 35 U.S.C. § 282. A party seeking to establish invalidity bears the burden of proving invalidity by clear and convincing evidence. *Moba, B.V. v. Diamond Automation, Inc.,* 325 F.3d 1306, 1319 (Fed.Cir.2003). Under 35 U.S.C. § 103(a), "[a] patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

A determination of "obviousness" rests upon the following factual findings: (1) the scope and content of the prior art; (2) the differences between the claimed invention and the prior art; (3) the level of ordinary skill in the art; and (4) any relevant secondary considerations, including commercial success, long felt but unsolved needs, and failure of others (collectively, the "*Graham* factors"). *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Though a court must base its obviousness determination on these factual findings, the question of whether a patent is obvious is ultimately a question of law. *KSR Int'l v. Teleflex Inc.,* 550 U.S. 398, 427, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007); *Graham,* 383 U.S. at 17, 86 S.Ct. 684.

Where a patent is comprised of several elements, each of which was known in the prior art, an objective reason to combine those elements must exist in order to support a finding of obviousness.

*KSR Int'l,* 550 U.S. at 418–19, 127 S.Ct. 1727. Though the existence of a teaching, suggestion, or motivation in the prior art to combine known elements may be probative of obviousness, the absence of a teaching, suggestion, or motivation does not preclude a finding of obviousness. *See id.* "[A] court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ." *Id.* at 418, 127 S.Ct. 1727.

### 2. The Sliding Plate

The '057 patent discloses the following claim:

1. A folding device for a stroller comprising:

a driving member movably mounted around a top portion of an upper support of the stroller and having a protrusion extending out therefrom, a first post movably received within a first slot defined in a periphery of the upper support and securely connected with said driving member, and a strip extending within the upper support and having a first distal end securely connected with said first post;

a driven member having a second post movably received within a second slot defined in a periphery of the upper support and a sliding plate slidably received within the upper support and securely connected with said second post and a second distal end of said strip;

a recovery member having a first end securely mounted to a distal end of the upper support and a second end of which is securely connected with said sliding plate; and

a cover enclosing a top end of a front support of the stroller and having a recess defined therein; said recess being defined to detachably receive said second post therein.

('057 patent, col. 3, l. 21—col. 4, l. 18.)

The '057 patent thus discloses a folding mechanism for a baby stroller illustrated in figure 3 of the patent.

FIG.3

The folding mechanism is operated by a protrusion (411), or trigger, extending out from the driving member (41) located on the upper support (20) of the stroller. ('057 patent, col. 2, ll. 26–31.) When the trigger is pulled (in the direction shown by arrow A in figure 5, below), due to the connection between the strip (50) and the sliding plate (44), the second post (204) leaves a recess (113), allowing the upper support to be separated from the front support and the stroller to be folded. (*Id.*, col. 2, ll. 55–65; *id.*, fig. 5.) When the trigger is released, the recovery member (43), or spring, causes the sliding plate to return to its original position. (*Id.*, col. 2, l. 65–col. 3, l. 3; *see also id.*, fig. 5.)

FIG.5

The parties agree that, based upon claims disclosed in a prior patent, the only novel element of the '057 patent is the development of the sliding plate (44) (the "'057 sliding plate"). (Mot. at 22; Opp'n at 27.)

Plaintiff concedes that the Evenflo patent,[10] filed on September 25, 1997, "discloses each element of claim 1 of the '057 patent except the critical sliding plate." (Opp'n at 27.) Thus, the Court finds the only element of the '057 patent not disclosed in the Evenflo patent is "a sliding plate slidably received within the upper support and securely connected with said second post and a second distal end of said

**10.** The "Evenflo patent" is U.S. Patent No. 6,139,046, filed September 25, 1997, a utility patent entitled "Stroller With Improved Features." (Lin Decl., Ex. N (Evenflo patent).) Although the Evenflo patent was not issued until October 31, 2000, after a patent is issued, its contents are considered prior art as of the date the application was filed. *See* 35 U.S.C. § 102(e); *Baxter Int'l, Inc. v. COBE Labs., Inc.,* 88 F.3d 1054, 1062 (Fed.Cir.1996) ("[T]he patent text remains secret while the patent application is pending, but after the patent is issued its subject matter is deemed to be prior art as of its filing date.") (citing *Hazeltine Research, Inc. v. Brenner,* 382 U.S. 252, 254–55, 86 S.Ct. 335, 15 L.Ed.2d 304 (1965)). Accordingly, the contents of the Evenflo patent are prior art as of September 25, 1997, over a year before the '057 patent was filed.

strip." ('057 patent, col. 4, ll. 9–11; *see* Opp'n at 27.)

As explained above, the '057 sliding plate is part of the driven member (42), or folding mechanism, located on the upper support of the stroller. ('057 patent, col. 2, ll. 37–52; *see also* fig. 3.) The sliding plate is securely connected to three items: a strip (50), a recovery member (43), and a post (204). (*Id.*) The strip [11] runs along the upper support of the stroller and connects the driving member (41) at the top portion of upper support to the driven member (42) at the lower portion of the upper support. (*Id.*, col. 2, ll. 37–41.) The recovery member [12] is defined as something "such as a coil spring." (*Id.*, col.2, ll. 30.) The post is "detachably received" within a recess (113) defined in a cover (112). (*Id.*, col. 2, ll. 53–55; *see also* figs. 3, 5.)

Accordingly, the '057 sliding plate discloses the following features: (1) it is part of the connection between the trigger and the folding mechanism of the stroller; and (2) it is connected to (a) a strip that links the trigger and the folding mechanism, (b) a spring, and (c) a post that engages and disengages the folding mechanism.

### 3. *Graham* Factors

#### a. Scope and Content of Prior Art

Whether a patent is invalid as obvious depends upon the subject matter contained within prior art that would have been known by a person of ordinary skill in the art of folding strollers. 35 U.S.C. § 103(a); *see also Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664 (Fed.Cir.2000) ("[T]he relevant inquiry for determining the scope and content of the prior art is whether there is a reason, suggestion, or motivation in the prior art or elsewhere that would have led one of ordinary skill in the art to combine the references."). Here, the parties do not dispute the four additional patents that are within the scope of the prior art. Accordingly, the Court finds the following four patents are all within the scope of relevant prior art to the '057 patent, and considers the content of these patents.

#### i. The Evenflo Patent

The first patent that is part of the prior art is the Evenflo patent. The parties do not dispute the Evenflo patent discloses a stroller-folding mechanism in which a user can fold the stroller by pulling upward on a finger (104) that causes a pin (94) to disengage from notches (84) in an engagement surface (82) in the folding mechanism. (Opp'n at 27; Evenflo patent, col. 7, ll. 11–50; *id.*, fig. 7.)

---

**11.** Previously, the Court construed the strip as "a piece of inextensible material that is long, narrow, and flat." (Claim Constr. Order at 7.)

**12.** Previously, the Court construed the recovery member as "the component positioned between the sliding plate and the distal end of the upper support, with its first end attached securely at or near the end of the upper support that is farthest away from the handle and its second end being connected securely to the sliding plate." (Claim Constr. Order at 9–10.)

*FIG. 7*

In the Evenflo patent, as in all of the prior art, the inventors use different terms to refer to stroller components similar to components in the '057 patent. Using the terms of the '057 patent, the Evenflo patent discloses a stroller folding-mechanism in which a user can fold the stroller by pulling upward on a trigger that causes a post to disengage from recesses in a cover in the folding mechanism.

The Evenflo patent trigger is connected to the post by a wire (100), or strip, located within the hollow interior of the upper frame (62); the post is also connected to a tension spring (98) which serves to bias the pin toward the lower end of the upper frame. (Evenflo patent, col. 7, ll. 19–31.)

### ii. The Arai Patent

The second patent that is part of the prior art is the Arai patent.[13] Although their descriptions of the patent differ slightly, the parties agree the Arai patent discloses a device on the handlebar of a stroller that locks and unlocks the folding mechanism of the stroller, preventing the stroller from collapsing inadvertently.[14] (Mot. at 26–27; Opp'n at 28; Arai patent, col. 1, l. 61–col. 2, l. 6; *id.*, Abstract; *id.*, fig. 3.)

13. The "Arai patent" is U.S. Patent No. 5,511,441, filed September 28, 1993, a utility patent entitled "Locking/Unlocking Manipulation Mechanism Disposed on the Handlebars of Baby Carriage." (Lin Decl., Ex. S (Arai patent).)

14. To the extent Plaintiff's description of the Arai patent differs from Defendant's description and does not conflict with the language of the patent itself, the Court uses Plaintiff's phrasing to describe the Arai patent.

# FIG. 3

The Arai patent discloses a stroller-locking mechanism in which a user presses a button (6) on the handlebar (15) of the stroller that causes a drive pin (19), or post, to disengage from the locking mechanism located on the side of the stroller.

(Arai patent, col. 3, ll. 10–28.) The button is connected to the post by a manipulation wire (3), or strip, that extends along the upper frame and is then connected to a slider (18) (the "Arai slider"). (*Id.*) The Arai slider is connected to the strip, a spring or coil, and a post. (*Id.*)

### iii. The Ziegler Patent

The third patent making up the prior art is the Ziegler patent.[15] The parties agree the Ziegler patent discloses a collapsible three-wheeled stroller with side frame intermediate pivot assemblies (34) including spring-biased slidable plungers (96). (Ziegler patent, col. 6, ll. 15–48; figs. 4, 11, 12.)

FIG. 4

**15.** The "Ziegler patent" is U.S. Patent No. 5,863,061 filed October 25, 1996, a utility patent entitled "Collapsible Three Wheeled Stroller." (Lin Decl., Ex. T (Ziegler patent).)

FIG. 11          FIG. 12

The Ziegler patent discloses a stroller-folding mechanism where a user pivots the upper lateral braces, causing a plunger (96) (the "Ziegler plunger") to disengage from a receptacle component (94) in the side pivot assembly (34).[16] (Ziegler patent,

16. As the Ziegler patent discloses identical pivot assemblies on each side of the stroller (*see* Ziegler patent, col. 6, ll. 16–18), the Court describes only one of the plungers.

col. 6, ll. 18–30.) The Ziegler plunger is connected to the upper lateral braces by a plunger linkage (102), or strip, located in the handlebar, and is also connected to a spring. (*Id.*, col. 6, ll. 36–48; *see also id.*, col. 8, ll. 8–14, 22–29.)

### iv. The Huang Patent

The fourth patent within the scope of the prior art is the Huang patent.[17] The parties do not dispute the Huang patent discloses a foldable stroller with a manipulation mechanism (30) located on the handlebar. (Mot. at 32; Opp'n at 31; Huang patent, Abstract; *id.*, figs. 1, 4.)

17. The "Huang patent" is U.S. Patent No. 5,769,447, filed on April 1, 1996, a utility patent entitled "Foldable Stroller." (Lin Decl., Ex. Q (Huang patent).) Defendant states the Huang patent is not part of the prior art reference because it had not yet issued prior to the filing of the '057 patent (Mot. at 32, n. 4); however, as noted earlier, an issued patent is considered prior art as of the date it was filed, even though its contents are not publicly disclosed until issuance. *See Hazeltine,* 382 U.S. at 254–55, 86 S.Ct. 335.

FIG. 1

FIG. 4

The Huang patent discloses a stroller-folding mechanism where a user presses a lever on the handlebar (31) that causes cables (34) located in the upper support (11) to move upwards, causing a slidable seat to be disengaged from a positioning seat so the stroller may be folded. (Huang patent, col. 4, ll. 7–18.) The cables are connected to a coupling (26) (the "Huang coupling") or sliding plate, which is also connected to a pin (24), or post, that secures the slidable seat in the stroller.

(*Id.*, col. 3, l. 64–col. 4, l. 6.) The coupling is connected to the cables, the post, and a spring (25). (*Id.*; *id.*, fig. 4.)

### b. Differences between the Claimed Invention and the Prior Art

The next step of the *Graham* analysis requires the Court to make factual findings as to the differences between the claimed invention—the '057 sliding plate—and the prior art. *Graham*, 383 U.S. at 17, 86 S.Ct. 684.

#### i. The Evenflo Patent

The Court finds the Evenflo patent discloses each element of claim 1 of the '057 patent except for the '057 sliding plate.

#### ii. The Arai Patent

Defendant argues the Arai slider is equivalent to the '057 sliding plate in both its position on the stroller and its manner of operation. (Mot. at 27.) Plaintiff "disagrees that the Arai slider 18 is analogous" to the '057 sliding plate. (Opp'n at 28.) Plaintiff also argues it would have been difficult to re-engineer either the Arai slider or the Evenflo patent to combine the Arai slider with the folding mechanism disclosed in the Evenflo patent. (*Id.* at 29.) The Court addresses Plaintiff's arguments regarding the obviousness of combining the slider of the Arai patent with the folding mechanism of the Evenflo patent in Section B.4, infra.

The Arai patent discloses a locking mechanism located on the side of the stroller which is operated by pressing a button on the handlebar of the stroller. The button on the handlebar is connected to the locking mechanism by a manipulation wire, which is connected to a slider. The Arai slider also connects to a drive pin, which

engages and disengages the locking mechanism, and a spring or coil. (*See* Arai patent, fig. 3.) Although the Arai patent discloses a locking mechanism rather than a folding mechanism, the location and basic structure of the locking mechanism are similar to the folding mechanism disclosed in the '057 patent.

The Court finds the Arai slider is similar to the '057 sliding plate in that both are: (1) part of the connection between the button or trigger and the folding/locking mechanism of the stroller; and (2) connected to (a) a cable or wire linking the trigger or button with the folding/locking mechanism, (b) a spring, and (c) a drive pin or post that engages and disengages the folding/locking mechanism.

The main difference between the two patents is that the folding mechanism disclosed in the '057 patent involves a post which sits in a recess, while the locking mechanism disclosed in the Arai patent involves a drive pin that engages the locking mechanism directly.[18]

#### iii. The Ziegler Patent

Defendant also asserts the Ziegler plunger is the equivalent of the '057 sliding plate. (Mot. at 29–32.) Plaintiff argues the Ziegler plunger is not the equivalent of the '057 sliding plate because: (1) the plunger is not connected to a post, while the '057 sliding plate is; and (2) the plunger is not "slidably received within the upper support" and is instead located outside of the support arm and within a separate housing. (Opp'n at 30–31.)

In the Ziegler patent, the plunger secures the stroller in its unfolded and usable position. In the '057 patent, the second post, which is attached to the sliding

---

18. The slider and spring disclosed in the Arai patent are not the focus of the patent, however. While the slider and its connection to the button on the handlebar are disclosed in Figure 3 of the patent, the spring is neither named nor identified by number in the patent.

(*See* Arai patent, fig. 3.) The Arai patent states that because details of the slider and drive pin are disclosed in other Japan Utility Mode Applications, these two elements are not described in detail in the patent. (Arai patent, col. 3, ll. 14–19.)

plate, secures the stroller in its unfolded and usable position. In both patents, the plunger or sliding plate is attached to a spring, and also connected to the upper portion of the stroller where the folding is initiated.

The Court finds the Ziegler plunger is similar to the '057 sliding plate in that both are: (1) part of the connection between the upper portion of the stroller and the side folding mechanism or "pivot assembly"; and (2) connected to (a) a strip or plunger linkage linking the upper portion of the stroller with the side folding mechanism and (b) a spring.

The Ziegler plunger differs from the '057 sliding plate because the Ziegler plunger engages the folding mechanism directly, whereas the '057 sliding plate is connected to the post that engages the folding mechanism. A second difference, highlighted by Plaintiff, is that unlike the '057 sliding plate, the Ziegler plunger is not located within the upper support itself, although it is connected to the upper portion of the stroller by means of a "plunger linkage" which is located within the upper support.

#### iv. The Huang Patent

Finally, Defendant argues the Huang coupling is equivalent to the '057 sliding plate. (Mot. at 32.) Plaintiff argues the Huang patent discloses elements that are very different from those in the '057 patent, and the Huang coupling is not like the '057 sliding plate. (Opp'n at 31–32.)

The Court finds the Huang coupling is similar to the '057 sliding plate in that both are: (1) part of the connection between the upper portion of the stroller and the folding mechanism; and (2) connected to (a) a cable linking the upper portion of the stroller with the folding mechanism and (b) a spring.

The Huang coupling differs from the '057 sliding plate in that the coupling is itself part of the folding mechanism, as the coupling disengages the slidable seat so that the stroller may be folded. Additionally, the folding mechanism disclosed in the Huang patent is different from the '057 patent's folding mechanism in that the Huang patent involves a slidable, disengaging seat.

#### c. Level of Ordinary Skill in the Art

As part of the *Graham* analysis, the Court also must make a factual determination of the level of ordinary skill in the art. *Graham*, 383 U.S. at 17, 86 S.Ct. 684. Here, neither party proposes any definition of a person of "ordinary skill in the art" of folding baby strollers.

The Federal Circuit has upheld decisions in which the district court did not make any factual finding as to the level of ordinary skill in the art. *See, e.g., Chore–Time Equip., Inc. v. Cumberland Corp.*, 713 F.2d 774, 779 (Fed.Cir.1983) (upholding summary judgment on obviousness in action where "because the subject matter of the patent and the prior art were in this case so easily understandable, a factual determination of the level of skill in the art was unnecessary.").

Generally, however, failure to make a finding as to the level of ordinary skill can be grounds for reversal or remand, on the basis that the district court failed to do a proper *Graham* analysis. *See, e.g., Ruiz*, 234 F.3d at 663 ("Our precedent clearly establishes that the district court must make *Graham* findings before invalidating a patent for obviousness.") (internal citations omitted); *see also Bausch & Lomb, Inc. v. Barnes–Hind/Hydrocurve, Inc.*, 796 F.2d 443, 451 (Fed.Cir.1986) (vacating trial court opinion and remanding to district court based upon the court's failure to make *Graham* findings). Accordingly, the Court considers the following facts in determining the level of ordinary skill in the art of folding baby strollers.

In determining the level of ordinary skill in the art, factors a court may

consider include "(1) the types of problems encountered in the art; (2) the prior art solutions to those problems; (3) the rapidity with which innovations are made; (4) the sophistication of the technology; and (5) the educational level of active workers in the field." *Ruiz*, 234 F.3d at 666–67 (citing *Custom Accessories, Inc. v. Jeffrey–Allan Indus., Inc.*, 807 F.2d 955, 962 (Fed. Cir.1986)). The person of ordinary skill is "a hypothetical person who is presumed to be aware of all the pertinent prior art." *Custom Accessories*, 807 F.2d at 962.

The '057 patent and the prior art patents seek to increase the ease of folding the stroller, while maintaining a sturdy frame for the stroller during unfolding and use. (*See, e.g.*, '057 patent, col. 1, ll. 6–9 ("The present invention relates to a device . . . which allows the stroller to be securely expanded and further to be folded easily."); Ziegler patent, col. 2, ll. 8–11 ("It is a further object of the present invention to provide such a . . . stroller wherein collapsing and folding can be initiated in a one step manner.").)

The prior art solutions to these problems include variations on the elements of folding mechanisms previously discussed. Innovations in the relevant art occur with some rapidity; the patents that make up the prior art here were all filed between September 28, 1993 (the Arai patent), and January 8, 1998 (the '057 patent), and, as described above, many of them contain overlapping or similar elements and designs.

In considering the sophistication of the technology and the educational level of active workers in the field, the Court notes neither Defendant nor Plaintiff provide any expert testimony to support their ar-

guments.[19] The patents discussed here do not contain any advanced technology, and understanding them requires only a rudimentary knowledge of physics and engineering. Accordingly, the Court finds a person of ordinary skill in the art of folding baby strollers does not require an advanced degree.

As the parties have not submitted any evidence of the level of ordinary skill in the art of folding baby strollers, the Court assumes without deciding that the level of ordinary skill in the art of folding baby strollers is that of an ordinary layman of average intelligence who is aware of the prior art—here the Evenflo, Arai, Ziegler, and Huang patents. *See, e.g., Chore–Time*, 713 F.2d at 779 n. 2 (citing with approval the district court's finding that the ordinary level of skill was that of an "ordinary layman of average intelligence" in case regarding poultry feeding pan patents). This finding of skill is the most favorable for Plaintiff, as a less sophisticated person of ordinary skill is generally more favorable to a patent owner. *See Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1573 (Fed.Cir.1984) ("[T]he level of skill of a layman . . . is, except in rare circumstances . . ., the most favorable view for the patent owner.").

### d. Secondary Indicia of Non–Obviousness

The fourth *Graham* factor includes any "secondary considerations of non-obviousness, which could include "commercial success, long-felt but unresolved need, failure of others, copying, and unexpected results." *Ruiz*, 234 F.3d at 663. The parties do not contend, nor does the Court find, any such secondary factors present here.[20]

---

19. By contrast, Plaintiff submitted a declaration from design and manufacturing expert Jonathan S. Colton in support of the motion for a preliminary injunction it filed in the

Northern District of Georgia on January 3, 2007. (Doc. No. 32, Ex. B.)

20. In its Reply, Defendant refers to statements by Plaintiff regarding the "alleged com-

### 4. The Sliding Plate Is Invalid as Obvious

▉▉ Based on the *Graham* factors, the Court concludes that it would have been obvious to a person of ordinary skill in the art of folding baby strollers to combine the elements disclosed in the Evenflo patent with the elements disclosed in the prior art patents to create the '057 sliding plate. As discussed above, for the purposes of this analysis, the Court assumes that a person of ordinary skill in the art of folding baby strollers is an ordinary layman of average intelligence who is aware of the Evenflo, Arai, Ziegler, and Huang patents.

Plaintiff argues the elements disclosed in the prior art patents do not invalidate the '057 patent for obviousness, because it would not have been obvious to a person of ordinary skill in the art to modify the folding mechanism disclosed in the Evenflo patent with the elements disclosed in the other patents to create the '057 sliding plate. Plaintiff first argues that none of the elements of the prior art patents are similar to the sliding plate. (Opp'n at 28–33.)

As established above, the Court finds the prior art patents disclose elements similar to the '057 sliding plate, particularly the Arai slider. All of the prior art patents disclose a sliding plate element that is: (1) part of the connection between the trigger and the folding mechanism of the stroller; and (2) connected to (a) a cable connecting the folding mechanism to the upper portion of the stroller and (b) a spring which is part of the folding mechanism. The Arai patent in particular discloses a slider that connects to a cable, a spring, and a pin in a manner similar to the sliding plate in the '057 patent.

Plaintiff next argues that, even if the Arai patent discloses a slider equivalent to the '057 sliding plate, it would not be obvious to combine the Evenflo patent with the Arai patent to create the '057 patent because the cited objectives of the Arai patent and the '057 patent are at odds. (Opp'n at 28.) Plaintiff asserts the object of the '057 patent is to "provide 'an improved device for easily operating the folding/unfolding of stroller' " while the object of the Arai patent is to "provide a means for 'preventing the manipulation lever from being inadvertently moved so that the locking means will remain locked.' " (*Id.* (quoting '057 patent, col. 1, ll. 29–30; Arai patent, col. 2, ll. 1–6).)

Plaintiff's argument regarding the allegedly differing objectives of the two patents lacks merit. As an initial matter, while the objective of the Arai patent is to create a useful locking/unlocking mechanism, this locking mechanism locks the stroller's folding mechanism to prevent the stroller from inadvertent collapse. Accordingly, the objective of the Arai patent—to improve the locking mechanism—is closely related to the improved operation of the folding mechanism of the stroller, and is consistent with the stated objective of the '057 patent.

Moreover, the Supreme Court has emphasized that "the problem motivating the patentee may be only one of many addressed by the patent's subject matter." *KSR Int'l*, 550 U.S. at 420, 127 S.Ct. 1727. When determining obviousness, a court should keep in mind that "any need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed." *Id.*

mercial success" of strollers covered by the '057 patent. (Reply at 13–14.) Plaintiff also raised this issue briefly at the hearing. As Defendant notes in the Reply, however, Plaintiff did not seriously argue this point, nor has it provided any evidence to support it. Accordingly, the Court does not consider this argument here.

In the arena of folding baby strollers, the goal of increasing stroller-folding ease must be assumed to be a driving force among all ordinary artisans. Accordingly, any improvement to a folding or locking mechanism—such as the addition of a sliding plate—that makes it easier to fold and unfold the stroller can be assumed to be a reason for combining known elements from prior patents.

Plaintiff also argues the addition of a sliding plate to the mechanism of the Evenflo patent would have been beyond the level of skill in the art at the time of Plaintiff's invention. (Opp'n at 28–29.) Plaintiff asserts the inventor would have had to have "ingenuity beyond one of ordinary skill in the art" to make that combination of elements. (*Id.* at 29.) Plaintiff's only argument in support of this assertion is that the addition of the slider from the Arai patent to the mechanism of the Evenflo patent required "re-engineering" of the structures. (*Id.*) Plaintiff's argument appears to suggest the Court find that any new development in a patent that would require adjusting or adding parts is "re-engineering" beyond the skill of an ordinary artisan.

Plaintiff offers no support for its argument, and the Court declines to adopt it. Instead, the Court finds that an ordinary artisan of baby strollers would have thought to combine elements previously disclosed in the prior art to incorporate the Arai slider or the Ziegler plunger into the folding mechanism disclosed in the Evenflo patent. "[A] combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR Int'l,* 550 U.S. at 401, 127 S.Ct. 1727 (finding patent for the combination of an adjustable throttle pedal with an electronic sensor to measure the pedal depression was invalid for obviousness because a person of ordinary skill would have seen the benefit of

combining those elements); *see also Ecolab, Inc. v. FMC Corp.,* 569 F.3d 1335, 1348–50 (Fed.Cir.2009) (finding patent that combined a known meat-sanitizing solution with a known method of sanitizing meat by high-pressure spraying was invalid for obviousness because a person of ordinary skill would have known why the combination was useful and how to do it).

■ Finally, there is no evidence that any of the prior art patents "taught away" from the idea of incorporating a sliding plate into the folding mechanism. An ordinary artisan of folding baby strollers would have been aware of the prior art patents which disclosed elements similar to the '057 sliding plate, such as the Arai slider, the Ziegler plunger, and the Huang coupling. When examining the prior art, "[a] reference must be considered for everything it *teaches* by way of technology and is not limited to the particular *invention* it is describing and attempting to protect," and "the combined teachings of the prior art as a whole must be considered." *EWP Corp. v. Reliance Universal, Inc.,* 755 F.2d 898, 907 (Fed.Cir.1985) (emphasis in original). The Arai patent alone disclosed a sliding device with all the elements of the '057 sliding plate. The prior art thus directly taught to the sliding plate.

Moreover, there was reason for the inventor of the '057 patent to want to improve his stroller patent to increase the ease of folding the stroller. "When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp." *KSR Int'l,* 550 U.S. at 420, 127 S.Ct. 1727; *see also DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.,* 464 F.3d 1356, 1368 (Fed.Cir.2006) ("[A]n implicit motiva-

tion to combine exists not only when a suggestion may be gleaned from the prior art as a whole, but when the 'improvement' is technology-independent and the combination of references results in a product or process that is more desirable, for example because it is stronger, cheaper, cleaner, faster, lighter, smaller, more durable, or more efficient.").

Finally, the Court relies upon "[c]ommon sense [which] has long been recognized to inform the analysis of obviousness if explained with sufficient reasoning." *Perfect Web Techs., Inc. v. InfoUSA, Inc.,* 587 F.3d 1324, 1328 (Fed.Cir.2009). The addition of the sliding plate to the folding mechanism disclosed in the Evenflo patent combined a single, simple, element disclosed in prior patents with another known invention. The Court finds that, to an ordinary artisan of folding baby strollers familiar with the prior art described here, the addition of a sliding plate to the elements already disclosed in the Evenflo patent would have been obvious. *See KSR Int'l,* 550 U.S. at 420, 127 S.Ct. 1727 ("Common sense teaches, however, that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle.").

Accordingly, the Court finds Defendant has provided clear and convincing evidence, in the form of the prior art patents, that the addition of the sliding plate to the Evenflo patent to create the invention claimed in the '057 patent would have been obvious at the time the '057 patent was filed. Plaintiff has not demonstrated there is a triable issue of material fact on the issue of obviousness. The '057 patent is thus invalid as obvious under § 103(a).

Because the Court finds the '057 patent is invalid for obviousness, it need not address Defendant's secondary argument

that its strollers do not infringe the '057 patent.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment. The Court finds that (1) the '826 patent is invalid based upon the on-sale bar of 35 U.S.C. § 102(b); and (2) the '057 patent is invalid as obvious under 35 U.S.C. § 103(a).